UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ANGELA DAWN DOWLING

CIVIL ACTION:

VERSUS

No.: 02-637

GEORGIA PACIFIC, LLC

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the court on a Motion for Summary Judgment filed by defendant, Georgia-Pacific, LLC against third-party defendant, Kellogg Brown & Root, Inc . (Doc. 46).[1] Kellogg Brown & Root ("KBR") has filed both an opposition to Georgia-Pacific's motion (doc. 55) and a response to Georgia-Pacific's statement of material facts (doc. 56). Georgia-Pacific has filed a reply. (Doc. 61). There is no need for oral argument. This court has jurisdiction pursuant to 28 U.S.C. §1332.

**I.    BACKGROUND**

Plaintiff, Angela Dowling, alleges that on or about June 10, 2001, she was injured in a fall from scaffolding while working at Georgia-Pacific's Port Hudson, Louisiana facility (the "Plant").  Plaintiff is a former employee of KBR. KBR contracted with Georgia-Pacific to perform work at the plant. Plaintiff filed a personal injury suit in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana,

---

[1] This ruling also considers Kellogg Brown and Root's Cross Motion for Partial Summary Judgment (doc. 57) on the same issues. Georgia-Pacific has filed an opposition. (Doc. 60) and KBR has filed a reply. (Doc. 62).

naming as a defendant Georgia-Pacific.

Thereafter, Georgia-Pacific filed a Third Party Complaint (doc. 11), naming as third party defendants, KBR and Pacific Employees Insurance Company ("PEIC") because of a 1999 "Cost-Plus Construction Agreement" (the "Contract") between Georgia-Pacific and KBR. The Contract was in effect when plaintiff's injuries allegedly occurred. The Contract required KBR to procure a general commercial liability insurance policy (GCL) from PEIC, under which Georgia-Pacific was included as an Additional Insured. The Pacific Employers Insurance Policy maintained a $2 million deductible. KBR executed a Deductible Endorsement to the Pacific Employers Insurance Policy which provided that all claims up to the amount of the deductible would be paid by a Claims Service Organization, ESIS.[2] The claim for damages by plaintiff, as asserted in the main demand, is covered under Articles 15 and 24— the defense and indemnity clauses of the Contract.

On April 3, 2007, all parties in the instant case participated in a mediation. At the mediation, Georgia-Pacific and plaintiff agreed to a settlement of plaintiff's claims.[3] KBR was present at the mediation but did not participate in the settlement. Georgia-Pacific was unable to reach a resolution of its claims for defense and indemnity against KBR, however, KBR conceded its obligation to provide a defense

---

[2] See Georgia-Pacific Exhibit B, Endorsement 8. (Doc. 46).

[3] The settlement reached between Plaintiff and Georgia-Pacific makes it impossible for a trier of fact to allocate fault.

to Georgia-Pacific pursuant to the Contract. To date, the parties have not reached a binding agreement and KBR has made no payment.

### a. Defendant's Claims

Georgia-Pacific moves for summary judgment for defense and indemnity from third-party defendant, KBR, pursuant to a Contract between Georgia-Pacific and KBR for the personal injury claims asserted by plaintiff, Angela Dowling. Georgia-Pacific argues that no genuine issue of material fact exists as to whether KBR breached the contract between the parties. Additionally, Georgia-Pacific argues that there is no genuine issue of material fact as to whether KBR owes Georgia-Pacific contractual defense and indemnity for plaintiff's claims. Georgia-Pacific moves this court to grant its motion and order KBR to defend and indemnify Georgia-Pacific for the claims asserted by plaintiff in the main demand and to reimburse Georgia-Pacific for all settlements paid and attorneys' fees and expenses incurred in the matter.

### b. Third Party Defendant's Claims

Third Party Defendant, KBR, argues that both it and Georgia-Pacific have mutual obligations of indemnity to one another arising out of the contract, and that such reciprocal obligations of indemnification are based upon the negligence and fault of each. Additionally, KBR asserts that its obligations of defense under the contract do not extend to Georgia-Pacific's prosecution of its third-party demand against KBR, and thus, this court should deny Georgia-Pacific's motion. On KBR's cross motion for partial summary judgment, it seeks a judgment interpreting the

contract to mean that (1) KBR is obligated to indemnify Georgia-Pacific on plaintiff's main demand to the extent KBR's fault or negligence contributed to plaintiff's loss; (2) Georgia-Pacific is obligated to indemnify KBR on plaintiff's main demand to the extent Georgia-Pacific's fault or negligence contributed to the plaintiff's loss; (3) KBR is obligated to defend Georgia-Pacific against plaintiff's claims, but is entitled to reimbursement from Georgia-Pacific in an amount equal to total defense costs minus the costs attributable to Georgia-Pacific's negligence or fault; and (4) KBR is not obligated to pay costs associated with Georgia-Pacific's prosecution of third party claims against KBR.

## II.  LAW AND ANALYSIS

### a.  Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. V. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  When the burden at trial rests on the non-moving party, as it does here, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case.  *Id.*  The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-moving party's case.  *Id.*

Although this court considers the evidence in the light most favorable to the

non-moving party, the non-moving party may not merely rest on allegations set forth in the pleadings. Instead, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2002 (1986).

Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F. 3d 137, 139-40 (5th Cir. 1996). If, once the non-moving party has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322; *see also*, Fed. Rule Civ. P. 56(c).

**b.**    **Contract Interpretation**

In this diversity case, the *Erie* doctrine requires the application of Louisiana's substantive law. In a civil action pending in federal court based on diversity jurisdiction, the court looks to state law for rules governing contract interpretation. *ACS Construction Co., Inc. of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003); *F.D.I.C. v. Fireman's Insurance Co. of Newark, N.J.*, 109 F.3d 1084, 1087 (5th Cir. 1997); *Matter of Topco, Inc.*, 894 F.2d 727, 738 (5th Cir. 1990). Likewise, a claim for indemnity under a contract provision is governed by state law. *Gulf Oil Corp. v. Delta Well Surveyors*, 836 F.2d 952, 956 (5th Cir. 1988).

The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing

meaning unless the words have acquired a technical meaning. LSA-C.C. arts. 2045, 2047; *see Louisiana Ins. Guar. Ass'n. v. Interstate Fire & Casualty Co.*, 93-0911 (La. 1/14/94, 630 So.2d 759, 763. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. LSA-C.C. art. 2046. *See Campbell v. Melton*, 817 So.2d 69, 75 (La. 5/14/2002). Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless the written expression of the common intention of the parties is ambiguous. *Ortego v. State, Through the Dep't of Trans. & Develop.*, 96-1332 (La. 2/25/97, 689 So.2d 1358. A contract is considered ambiguous on the issue of intent when it either lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed. LSA-C.C. art. 1848; *Brown v. Drillers, Inc.*, 93-1019 (La. 1/1/94), 630 So.2d 741, 748; *Dixie Campers, Inc. v. Vesely Co.,* 398 So.2d 1087 (La. 1981); *Rudman v. Dupuis*, 206 La. 1061; 20 So.2d 363 (La. 1944). Contract interpretation of ambiguous terms requires construction against the contract's drafter. *See* LSA-C.C. art. 2056; *Campbell*, 817 So.2d at 75. Whether a contract is ambiguous or not is a question of law. *Fourroux v. Bd. of Commissioners for the Orleans Levee District*, 02-0374 (La. App. 4th Cir. 1/8/03), 837 So.2d 698. When a contract is to be interpreted by the court as a matter of law, a motion for summary judgment is the proper procedural vehicle to present the

question to the court. *Id.,* at 702.

### c.     **Relevant Contract Provisions**

The relevant provisions from the Contract between Georgia-Pacific and KBR are as follows:[4]

Article 15<br>Liability Insurance

> 15.2 The Comprehensive Liability Insurance policies...shall include...Blanket Written Contractual...liability coverage. Blanket Written Contractual Liability Insurance shall specifically include Contractor's indemnification obligations under the Contract.
>
> 15.3...Except for the Workers' Compensation Insurance, and to the extent of Contractor's [KBR] obligations under this agreement, G-P (Georgia-Pacific) shall be an additional insured on all such policies of insurance. The coverages afforded under these insurance policies shall be primary coverage in all instances regardless of whether or not G-P has similar coverage...Contractor shall be responsible for payment of any and all deductibles from insured claims under these policies....The maintenance of this insurance shall not in any way operate to limit the liability of Contractor to G-P.
>
> 15.4 Contractor shall indemnify and hold G-P harmless from and against any and all loss, cost, damage and/or expense actually incurred by G-P as a consequence of any loss sustained as a result of the occurrence of a peril for which coverage is required of the Contractor under this agreement and from and against any and all loss, cost, damages, and/or expense incurred by G-P as a consequence of the application of any exclusions or deductibles under Contractor's insurance described herein, or any of the other policies of insurance required of Contractor under Article 16 hereof.

* * * * * * *

---

[4] Georgia-Pacific Exhibit A (Doc. 46).

### Article 24
### Indemnification

24.1 Except as provided in Article 16 of these General Conditions and to the fullest extent permitted by law, Contractor shall defend, protect, indemnify and hold G-P harmless from any and all losses, costs, expenses, damages, liabilities, payments, recoveries and judgments, including those arising out of bodily injury or property damages, including attorney's fees (hereinafter in this Article 24 referred to as "Loss"), claimed, threatened, incurred by or recovered against G-P and arising out of or resulting from the performance or non-performance of the Work or this Contract by Contractor or its consultants and Subcontractors. To the extent the Loss is caused, in part, by the joint, concurrent, or contributory negligence of G-P, it [*sic*] agents or employees, Contractor shall provide said indemnification to the extent or degree Contractor is the cause of or liable for the Loss.

24.2 Contractor shall, at Contractor's sole cost and expense, defend against all actions, suits or other proceedings that may be brought on any and all such claims for which Contractor may have an indemnification obligation under Paragraph 24.1 and any appeals that may be made thereon; and to pay or satisfy any judgment or decree that may be rendered against G-P in any such action, suit or legal proceeding in accordance with and to the extent provided in Paragraph 24.1. G-P shall indemnify Contractor from any Loss incurred by Contractor in connection with any such actions, suits or proceedings to the extent or degree the final judgment or decree is based upon the sole, joint, concurrent or contributory negligence of G-P.

**d.     Duty to Defend and Indemnify**

    **i.     The *Bowman* Case**

A sister court in this district considered a nearly identical matter in its Ruling

on motions in *Bowman v. Georgia-Pacific Corporation*, Civil Action No. 02-578, M.D. La. (3/21/07). The identical contract between Georgia-Pacific and KBR was at issue. In *Bowman*, an employee of KBR sued Georgia-Pacific for personal injuries allegedly received as a result of an accident which occurred on Georgia-Pacific's premises during the performance of work pursuant to the contract with KBR. Georgia-Pacific tendered the claims by the employee to KBR for defense and indemnity without avail. Georgia-Pacific asserted a Third Party Complaint against KBR and its insurer, Pacific Employers Insurance Company for defense and indemnity. Georgia-Pacific subsequently filed a Motion for Summary Judgment against KBR, seeking an order requiring KBR to provide defense and indemnity to Georgia-Pacific pursuant to the contract.

The *Bowman* court held that the Contract between KBR and Georgia-Pacific is clear and unambiguous. The court adjudged that under the Contract, KBR owes Georgia-Pacific defense and indemnity for the claims of the injured employee, Bertha Bowman. However, the court also found

> that the [Contract] does not obligate Kellogg [KBR] to indemnify Georgia-Pacific for Georgia-Pacific's negligence since it does not contain the strict language required to impose such an obligation. In fact, the contract requires Georgia-Pacific to indemnify Kellogg **when Georgia-Pacific is at fault**.

*Bowman*, at 10. (emphasis added).

To this extent, in the instant matter, KBR acknowledges an obligation to defend and indemnify Georgia-Pacific, but only to the degree it [KBR] is found at

fault. KBR argues that it does not owe Georgia-Pacific a defense and indemnity for Georgia-Pacific's own negligence and does not owe Georgia-Pacific reimbursement for attorney's fees and costs associated with enforcement of the contractual obligations. Thus, KBR prompts the court to consider whether the cost of defense and indemnification should be shared by the parties in proportion to their respective negligence or fault.[5]

The *Bowman* court further recognized KBR's obligation to defend Georgia-Pacific for all attorneys' fees, costs, and damages paid, up to KBR's $2 million deductible under the Pacific Employers Insurance Policy. The court found that the insurer's duty under the policy was not triggered because there was no evidence that the plaintiff's damages exceeded the deductible threshold amount.

This court must now look to the terms of the Contract to determine (a) whether the parties intended an agreement whereby KBR has an absolute obligation to indemnify Georgia-Pacific up to the $2 million deductible, to provide Georgia-Pacific

---

[5] The parties come before the court seeking a determination of who should "foot the bill" for the alleged accident involving Ms. Dowling. Implicit in KBR's argument is that as a result of the settlement, there is no apportionment of fault. Thus, the trier of fact will never have an opportunity to apportion fault, and since fault cannot be apportioned, KBR has no liabilities. In reality, we will never know whether Georgia-Pacific's fault contributed to the plaintiff's loss or whether KBR's fault contributed to the plaintiff's loss. To follow the argument out, without such apportionment, Georgia-Pacific would be solely responsible for payments to plaintiff, and KBR would not bear any of the burden. However, the Contract between Georgia-Pacific and KBR specifically includes language that triggers KBR's defense and indemnity obligations in the event of an occurrence such the one the plaintiff allegedly encountered on June 10, 2001. People and corporations buy insurance for this reason. Regardless, this case does not turn on allocation of fault, it turns on the terms of the contract and the intent of the parties to the meaning of the contract.

a defense on the main demand, and to provide Georgia-Pacific with a defense for the prosecution of this third party demand or (b) whether the parties intended an agreement whereby each party has reciprocal duties to defend and indemnify.

### ii. KBR's Duty to Defend

Georgia-Pacific contends that KBR owes Georgia-Pacific a defense in the main demand and on its third party claim. KBR has acknowledged its duty to defend Georgia-Pacific on the main demand, but only as to that portion not attributable to Georgia-Pacific's fault. KBR further argues that it has no duty to defend Georgia-Pacific on this third party claim.

First, with respect to the duty to defend on the main demand, Paragraph 24.2 of Article 24 provides that KBR "shall, at its sole cost and expense, defend against all actions, suits, or other proceedings that may be brought on any and all such claims for which [KBR] may have an indemnification obligation under Paragraph 24.1." The *Bowman* court held that the Contract specifically requires KBR to provide a defense on behalf of Georgia-Pacific. *Bowman,* at 8. Paragraph 24 does not contain any condition which requires Georgia-Pacific to be free from fault before the duty to defend is triggered. Here, like in *Bowman*, there has been no allocation of fault. The allocation of fault is not relevant to a finding that KBR has a duty to defend.

KBR argues that its duty to defend is limited pursuant to Paragraph 24.2, which reads in pertinent part, "G-P [Georgia-Pacific] shall indemnify Contractor from

any Loss incurred by Contractor in connection with any such actions, suits or proceedings to the extent or degree the final judgment or decree is based upon the sole, joint, concurrent or contributory negligence of G-P." The court finds that this determination can never be made under the facts of this case. The obligation of defense and indemnity found in Article 24 is not bilateral. It does not provide that Georgia-Pacific will provide a defense and indemnity to KBR from the inception of any claim, such as that filed by plaintiff. The main parties to the case reached a final settlement on the claims in which no allocation of fault took place. In the settlement reached by the parties on the main demand, Georgia-Pacific has denied any and all liability fo the accident giving rise to the suit, or for plaintiff's ensuing claim for damages. Thus, there is not, nor can there ever be a "final judgment or decree...based upon the sole, joint, concurrent or contributory negligence of G-P." In light of the relevant contract language, the court finds KBR has a duty to defend Georgia-Pacific on the main demand for the full cost of Georgia-Pacific's defense.[6]

Next, Georgia-Pacific argues that the Contract requires KBR to pay Georgia-Pacific's attorney's fees and expenses relating to the work performed to establish the right to defense and indemnity under the Contract. KBR argues that the Contract language limits its duty to defend to the main demand. Generally, the recovery of

---

[6] Like in *Bowman*, Georgia-Pacific argues that Article 15 requires KBR to provide indemnification and a defense. Because this court also finds that KBR is obligated to defend pursuant to Article 24, it need not consider the Article 15 argument. Article 15, though, directs the court to the existence of the $2 million deductible.

attorney's fees is limited to the defense of the claim indemnified against. No recovery is allowed for attorney's fees and expenses incurred in establishing the right to indemnity, unless provided for by contract. *Morris v. Schlumberger, Ltd.*, 445 So.2d 1242, 1247 (La. App. 3rd Cir.), writ denied, 449 So.2d 1345 (La. 1984).

> Article 24, Paragraph 24.1 of the Contract provides in relevant part,
>
>> Contractor shall defend, protect, indemnify and hold G-P harmless from **any and all losses, costs, expenses, damages, liabilities, payments, recoveries and judgments**...including attorney's fees...claimed, threatened, incurred by or recovered against G-P and arising out of or resulting from the performance or non-performance of the Work **or this Contract** by Contractor or its consultants and Subcontractors. (emphasis added).

In *Carrier v. Louisiana Pigment Co., L.P.*, 2002-829 (La. App 3rd Cir. 2/19/03), 846 So.2d 803, a suit involving the interpretation of an indemnity agreement, the court granted summary judgment in favor of Louisiana Pigment on its third party demand against Miller Environmental Services, Inc. ("Miller") and its insurer, National Union Insurance Company, for defense and indemnity. All parties participated in a mediation of the plaintiff's main demand and settled the case for $4.5 million. Like this matter, no apportionment of fault as to any of the defendants was made in the settlement, and all defendants reserved rights against each other. Louisiana Pigment asserted a claim for defense and indemnity from Miller. The court relied upon paragraph 7 of the contract between Louisiana Pigment and Miller, which provided that Miller would:

> indemnify, defend, and hold harmless Louisiana Pigment, from

> and against... all claims, causes of action, losses, damages, suits and **liability of every kind**, including all expenses of litigation, court costs, and attorney's fees for damages to any property or for injuries, sickness or death of any person (including but not limited to employees of [Miller]...)caused by, arising out of or related, directly or indirectly, to any work or operations performed by [Miller]...under or by any reason of this Contract... (emphasis added)

*Id.*at 806.  The court found that Miller's obligation under paragraph 7 of the contract applied regardless of whether the damage or injury was contributed to by the negligence or fault of Louisiana Pigment, unless the damage or injury was due to the sole negligence or fault of Louisiana Pigment. *Id.*

The appellate court upheld the trial court's judgment, finding that paragraph 7 of the contract clearly provided for costs and attorney's fees incurred to pursue indemnity.  *Id.* at 812.  In comparing the language in *Carrier* with the relevant language in the Contract at issue, the court finds that the similarities outshine the differences.

In *Wuertz v. Tobias*, 512 So.2d 1209 (La. App.5th Cir. 1987), American Oil Company ("Amoco"), the lessor of a service station and co-defendant in the suit for personal injury, filed a third party demand against the lessee of the station and its general liability insurer for indemnity under the contract.  The court found Amoco was entitled to recover reasonable expenses and attorney's fees expended by it in its defense of the principal demand and was also entitled to recover all reasonable expenses and attorney's fees incurred in establishing its right to indemnity.  The

-14-

indemnity and defense language in *Wuertz* provided:

> all claims, demands, liabilities, suits or actions (including all reasonable expenses and attorneys' fees incurred by or imposed on Lessor in connection therewith) for any such loss, damage, injury or other casualty. **Lessee agrees to pay all reasonable expenses and attorneys' fees incurred by Lessor in connection with the provisions of this paragraph**. (Emphasis added).

*Id.* at 1211. The court held that the language clearly and specifically provided for the recovery of attorneys' fees incurred to establish the right to indemnification. *Id.* at 1212. The language in the KBR-Georgia-Pacific Contract is, at the very least, as equally as encompassing as in the agreement implicated in *Wuertz*.

In *Naquin v. Louisiana Power and Light Co.*, 2005-2104 (La. App. 1st Cir. 11/17/06), 951 So.2d 228, *writ denied*, 2006-2979 (La. 3/9/07), 949 So.2d 441, the trial court awarded Louisiana Power and Light ("LL & E") $183,064.27 in damages, costs and attorneys' fees for LL&E's expenses related to defending the underlying tort claim and for establishing the right to indemnification from Entergy Louisiana LLC ("Entergy"). *Id.* at 230. The court relied on the following provision in the contract between LL&E and Entergy:

> [Entergy] hereby assume[s] the full liability and responsibility of all risks and hazards and shall be solely and directly responsible for all personal injury and/or loss of life and/or damage...caused by the construction, existence, operation and maintenance of said distribution line, and **shall hold [LL&E] free and harmless with respect to any and all claims for loss, death, destruction, or damage arising from the construction, existence, operation and maintenance of said distribution**

> **line, including a reasonable attorney** provided however, that [Entergy] does not agree to hold [LL&E] harmless from any liability contributed to or caused by any act of negligence of [LL&E]. (Emphasis added)

*Id.*

The trial court held that the words "free and hold harmless" meant that LL&E should not have had to pay anything, and whatever expenses and costs were incurred should be wiped out. Such language included the right for LL&E to have their attorneys' fees and costs paid by Entergy. *Id.* at 231.

The court disagrees with KBR's argument that the language in the above-mentioned cases is too broad and dissimilar from the language at issue. The provision at issue is general and broad and it is clear to the court that the parties intended that KBR would be fully responsible for all damages, costs, and attorneys' fees with respect to both the main demand and the third party demand. *See Id.* at 233. Thus, KBR must provide a defense to Georgia-Pacific on the third party demand, as well.

### iii.    KBR's Duty to Indemnify

Georgia-Pacific argues that Articles 15 and 24 of the Contract trigger KBR's duty to indemnify Georgia-Pacific for all losses, costs, damages or expenses, incurred by Georgia-Pacific as a result of the $2 million deductible. KBR argues it is not under a duty to indemnify Georgia-Pacific for Georgia-Pacific's own negligence. KBR further argues that the scope of indemnification owed to Georgia-Pacific by KBR cannot be quantified until the trier of fact allocates fault of all parties

for causing or contributing to the plaintiff's injuries and damages.

As a matter of law, KBR directs the court to the principle that "a contract of indemnity whereby a party is indemnified against the consequence of his own negligence is strictly construed, and such a contract will not be construed to protect a party against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms." *Polozola v. Garlock, Inc.*, 343 So.2d 1000, 1003 (La. 1977), citing *Lee v. Allied Chemical Corp.*, 331 So.2d 608 (La. App. 1st Cir.), *cert denied*, 337 So.2d 525 (La. 1976). In *Polozola*, the Louisiana Supreme Court found the contract required Garlock to indemnify Dow employees against losses resulting from their own negligence. *Id.* at 1003. The court notes that the *Polozola* contract did not include the same provisions as the Contract at issue here. Nevertheless, the *Polozola* rule relied on by KBR and cited by the court in *Bowman* raises the question of whether the Contract at issue has clear and unequivocal language with regard to when KBR must provide indemnity to Georgia-Pacific.

Paragraph 15.3 of the Contract between KBR and Georgia-Pacific provides in part, "Contractor [KBR] shall be responsible for payment of any and all deductibles from insured claims under these [comprehensive liability insurance] policies...." Paragraph 15.4 states,

> [KBR] shall indemnify and hold [Georgia-Pacific] harmless from and against any and all loss, cost, damage and/or expense actually incurred by [Georgia-Pacific] as a consequence of any loss sustained as a result of the occurrence of a peril for which coverage is required of [KBR] and from and against any and all

> lost, cost, damages, and/or expense incurred by [Georgia-Pacific] as a consequence of the application of any exclusions or deductibles under [KBR's] insurance.

Next, in Paragraph 24.1,

> [KBR] shall defend, protect, indemnify and hold [Georgia-Pacific] harmless from any and all losses, costs, expenses, damages, liabilities, payments, recoveries and judgments, including those arising out of bodily injury or property damages, including attorney's fees claimed, threatened, incurred by or recovered against Georgia-Pacific and arising out of or resulting from the performance or non-performance of the Work or this Contract by KBR or its consultants and Subcontractors.

This court reaches the same conclusion as that of the *Bowman* court. "Under the clear, express, and unambiguous terms of the contract, KBR is obligated to provide indemnity to Georgia-Pacific." *Bowman* at 10. A finding that Georgia-Pacific is not fault is not a condition precedent to this obligation. The Contract does not provide anywhere that "being free from fault" is a condition that Georgia-Pacific must meet in order to receive indemnity from KBR.

### III.   CONCLUSION

Accordingly, for the foregoing reasons:

IT IS ORDERED that Georgia-Pacific's Motion for Summary Judgment for Contractual Defense and Indemnity from KBR (doc. 46), is hereby **GRANTED**. The court finds that KBR has the duty to provide Georgia-Pacific with (1) a defense on both the main demand asserted by the plaintiff without regard to fault and on the third party demand asserted by the defendant and (2) indemnity.

IT IS FURTHER ORDERED that KBR's Cross-Motion for Partial Summary Judgment for Contractual Defense and Indemnity is hereby **DENIED**.

Baton Rouge, Louisiana, January 9, 2008.

JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA